·(46 Misc. Rep. 4.)

BERGER v. WALDBAUM et al.

(Supreme Court, Trial Term, Kings County. December, 1904.)

1. DESCENT AND DISTRIBUTION—REAL ESTATE.
   An intestate left, her surviving, a husband, a mother, one brother, but
   no children or descendants of deceased children, and no father, and was
   seised at her death of real estate in fee simple.· *Held*, that under Rev.
   St. pt. 2, p. 752, c. 2, § 6, the real estate descended to the mother for life,
   reversion to the brother, subject to any curtesy in the husband.

2. MERGER—CONVEYANCE TO TENANT BY CURTESY.
   Where land descended to intestate's mother for life, with reversion to
   her brother, subject to her husband's curtesy, and the mother conveyed
   'to the husband, subject to his curtesy, and the brother and his wife quit-
   claimed to the husband, the curtesy was merged in the higher title.

3. VENDOR'S LIEN—NOTICE.
   A grantee of real estate withheld part of the price to secure him
   against claims of third persons, and recorded an instrument declaring

that he withheld said sum. *Held,* that the grantor had a vendor's lien for the unpaid balance, of which the instrument was notice.

4. PAYMENT—PRESUMPTION.
  Where 30 years have elapsed since the time fixed for payment of the balance of the purchase price of land, the presumption of payment arises.
  [Ed. Note.—For cases in point, see vol. 39, Cent. Dig. Payment, §§ 178, 179.]

5. VENDOR'S LIEN—LIMITATIONS.
  A vendor's lien is barred by the lapse of 30 years.
  [Ed. Note.—For cases in point, see vol. 48, Cent. Dig. Vendor and Purchaser, § 777.]

Action by Morris Berger against Annie Waldbaum and others. Judgment for defendants.

Altkrug & Kahn, for plaintiff.
Simon Berg (Max Halkeimer, of counsel), for defendants.

MADDOX, J. It was conceded on the trial that Eliza Ann Plumstead had good title to the premises in question, and that she died intestate on August 12, 1870, seised and possessed of the same in fee simple absolute. She left, her surviving, her husband, Lewis M. Plumstead, her mother, Maria Fulmer, and one brother, George Fulmer, but no children or descendants of deceased children, and no father; and hence the inheritance descended "to the mother during her life, and the reversion to such" brother in fee. Rev. St. pt. 2, p. 752, c. 2, § 6. Administration upon her estate was granted by the surrogate of Kings county to Lewis M. Plumstead, her husband, on January 10, 1871. Maria Fulmer, the mother, by deed dated January 8, 1872, and recorded on January 17, 1872, conveyed the premises to said Lewis M. Plumstead, subject to his right of curtesy; and by a deed dated February 12, 1872, and recorded February 14, 1872, George Fulmer, the brother, and Margaret, his wife, quitclaimed the same premises to said Lewis M. Plumstead. The effect of such conveyance was to merge the curtesy right, if such estate then existed, in the greater title, for we see that by a deed with full covenants, dated January 10, 1872, and recorded February 14, 1872, Plumstead conveyed the same premises to Franz Schmitt.

It will be seen that the deed from George Fulmer to Plumstead and that from Plumstead to Schmitt were recorded at the same time; that such recording was but about thirteen months after the granting of the letters of administration, and that the period of three years within which proceedings for the sale of decedent's lands for the payment of debts might be instituted (see Rev. St. pt. 2, p. 100, c. 6, tit. 4; Laws 1837, pp. 531, 532, c. 460, §§ 40–43) had then almost two years to run. That period of time ended in January, 1874.

The expressed consideration in the deed to Schmitt is $4,800, and it appears from the instrument signed by Schmitt, bearing date February 14, 1872—which, by the way, is the date of the record of the deed from Plumstead to him—and recorded February 29,

93 N.Y.S.—23

1872, that the grantee therein, Schmitt, declaring that his grantor had no title to said lot, had retained $1,200 from the purchase money, and promised to pay the same, without interest, to Plumstead, his heirs or assigns, on March 1, 1874, provided Plumstead obtained and caused to be recorded "a full covenant warranty deed by which" the lot in question "should be conveyed to" Schmitt "in fee simple and free and clear of all incumbrances," and provided, also, that Plumstead should indemnify and keep Schmitt "harmless from all claims and demands whatsoever against the estate of Eliza Ann Plumstead," and that in event of failure by Plumstead so to do, or that Schmitt should not "remain in full and undisturbed possession of said premises until March 1, 1874," the promise and covenant to pay "shall be null and void and of no effect." The time fixed thereby for such payment is, we see, a little more than a month after the expiration of the aforesaid period of three years wherein an application for the sale of decedent's real property for payment of debts might be made; and it appears that Schmitt in October, 1877, conveyed the premises through one Roos, as an intermediary, to his wife, who by deed dated June 14, 1878, and recorded June 15, 1878, conveyed the same to one Hamburger. This last deed contains ·full covenants, and it is to be presumed that Schmitt and his grantee, his wife, had remained "in full and undisturbed possession of said premises" until. the time of such conveyance—a day long subsequent to the one fixed for the aforesaid payment by Schmitt to Plumstead.

Plumstead had a vendor's lien for the unpaid balance of the purchase money (i. e., $1,200), and the instrument before referred to, signed by Schmitt, was evidence and notice of such lien. More than 30 years have now elapsed since the time fixed for the payment of the balance of such purchase money, and the presumption of payment of the vendor's lien must obtain. Again, any action for the recovery of that sum or for the enforcement of such vendor's lien would be barred by the statute of limitations, if such bar was set up. That paper was not, in my judgment, an equitable mortgage. It is not in form a mortgage. There are no words of grant, and there is nothing indicating an intention to charge the land or to create a lien thereon. No agreement to give a mortgage is shown, and there is nothing but the naked promise to pay the sum stated, without interest, on the day fixed. But even if it were an equitable mortgage, the presumption of payment would now obtain, and the bar of the statute of limitations, if asserted, would run against any recovery thereon.

The declaration therein contained that Plumstead did not have title to said lot was not conclusive upon Schmitt. It was not against his title, though it was sufficient to put a purchaser upon inquiry. But on the evidence presented, Plumstead had good title, for the mother and brother of the deceased had conveyed their interests and estates in the land to him. The fact that the deed from the brother· was what is known as a "quitclaim deed" makes it none the less effective, since it carried all of his estate in the premises to the grantee therein named. Wilhelm v. Wilken, 75

Hun, 552, 27 N. Y. Supp. 853; Veit v. Dill, 78 Hun, 171, 28 N. Y. Supp. 937.

It was clear, I think, that the sum was withheld by Schmitt simply as an indemnity against any claims which might be presented against the estate of the decedent, and against the possibility of proceedings to sell under the statute before quoted, and of his being put out of possession by reason thereof.

Judgment for defendant, with costs.